UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **MICHAEL CAMPBELL,** | |
| **PLAINTIFF,** | |
| V. | CIVIL ACTION NO.: |
| **EXPERIAN INFORMATION SOLUTIONS, INC. AND EQUIFAX INFORMATION SERVICES, INC.. AND TRANSUNION LLC,** | *JURY TRIAL DEMANDED* |
| **DEFENDANTS.** | |

## COMPLAINT

COMES NOW the plaintiff, Michael Campbell ("Plaintiffs"), by and through their undersigned counsel, and with knowledge as to their own acts, upon information and belief and investigation of counsel as to the acts of others, believing such allegations have evidentiary support after a reasonable opportunity for further investigation or discovery, allege as follows:

## PRELIMINARY STATEMENT

1.  This is an action for an actual, statutory and punitive damages, costs and attorneys' fees pursuant to 15 U.S.C. §1681, *et seq*. (Fair Credit Reporting Act or FCRA).

1

2. "Credit is the lifeblood of the modern American economy, and for the American consumer access to credit has become inextricably tied to consumer credit scores as reported by credit reporting agencies." *Burke v. Experian,* Case No.: 1:10-cv-1064-AJT-TRJ (E.D. Va. March 18, 2011).

3. Congress made the following findings when it enacted the FCRA:

> **(1)** The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.
>
> **(2)** An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.
>
> **(3)** Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.
>
> **(4)** There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

15 U.S.C. § 1681(a)(1-4). Thus, one of the fundamental purposes of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and

equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter." 15 U.S.C. § 1681(b).  Accordingly, "[t]he FCRA evinces Congress' intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear 'grave responsibilities.'" *Cushman v. Trans Union*, 115 F.3d 220, 225 (3d Cir. 1997).

4. "Mixed files" create a false description of a consumer's credit history.

5. A "mixed file" occurs when information that relates to Consumer B appears in Consumer A's credit file.

6. Specifically, a mixed file "refers to a Consumer Report in which some or all of the information pertains to Persons other than the Person who is the subject of that Consumer Report." *F.T.C. v. TRW, Inc.* 784 F.Supp. 361, 362 (N.D. Tex. 1991).[1]

7. More recently, the New York Attorney General defined a mixed file as credit file information that is mixed with that of another consumer.[2] *See*

---

[1] Experian Information Solutions, Inc. is formerly known as TRW, Inc.

[2] *See* http://www.ag.ny.gov/press-release/ag-schneiderman-announces-groundbreaking-consumer-protection-settlement-three-national Last visited June 29, 2016.

3

*also* http://www.ohioattorneygeneral.gov/Files/Briefing-Room/News-Releases/Consumer-Protection/2015-05-20-CRAs-AVC.aspx.

8. Defendants were aware of the government enforcement actions described in the preceding paragraph before Plaintiff filed this lawsuit.

9. Mixed files are not a new phenomenon. The defendants have been on notice of the existence of mixed files for over (30) years. *See Thompson v. San Antonio Retail Merchants Ass'n*, 682 F.2d 509, 511 (5th Cir. 1982).

10. Mixed files occur despite consumers' unique personal identifying information, such as Social Security numbers or date of birth, or both.

11. Further, mixed files result in the disclosure of a consumers' most personal identifying and financial information absent the consumer's knowledge or consent, or both.

12. Mixed files also result in the debt collection harassment of innocent consumers because debt collectors use CRA databases to "skip trace" debtors and locate the alleged debtor's address and telephone number.

13. In the 1990's the Federal Trade Commission ("FTC") filed a lawsuit against the nationwide consumer reporting agencies, including

4

Equifax, Trans Union and Experian's predecessor TRW because of their failure to comply with the FCRA including the mixing of consumers' files.

14.     In the 1990's the Attorneys General of a number of states filed a lawsuit against Equifax, Trans Union and Experian's predecessor TRW because of their failure to comply with the FCRA, including the mixing of consumers' files.

15.     In 1991, TRW signed a Consent Order with the FTC. To prevent the occurrence or reoccurrence of a mixed file, TRW agreed to use, for matching and identification purposes, a consumer's full identifying information, defined as full first and last name, full street address, zip code, year of birth, any generational designation and Social Security number.

16.     In 1992, Equifax signed an Agreement of Assurances with the Attorneys General of 18 states. Equifax agreed it would maintain reasonable procedures to prevent mixed files by accepting and using a consumer's full identifying information (full first and last name, middle initial, full street address, zip code, year of birth, any generational designation, and Social Security number) for matching and identification purposes.

17.     In 1994, Equifax signed a Consent Order with the FTC. Equifax agreed it would follow reasonable procedures to assure the maximum possible accuracy of the information on a consumer's file including, but not limited to,

5

procedures to detect logical errors prior to reporting information on a consumer's file, procedures to prevent mixing as a result of data entry by third parties when the third party requests a consumer's report, and procedures during a reinvestigation specifically designed to resolve consumer disputes related to a mixed file.

18.    In 1992, Trans Union signed a Consent Order with the Attorneys General of 17 states. Trans Union agreed that it would maintain reasonable procedures to prevent the occurrence or reoccurrence of mixed files. For example, procedures during the reinvestigation process include, assigning mixed file cases to Senior Investigators who, as appropriate, must pull all files related to the consumer, fully verify disputed information, make any changes, deletions or additions to correct the file and resolve the dispute, and prepare a summary of the problem to be filed with another department for corrective action.

19.    The defendants in this case are aware of each of the Federal Trade Commission and state attorney general enforcement actions[3] concerning or related to mixed files.

---

[3] Including the most recent Alabama state attorney general enforcement action settled May 20, 2015. See http://www.ohioattorneygeneral.gov/Files/Briefing-Room/News-Releases/Consumer-Protection/2015-05-20-CRAs-AVC.aspx Last visited June 29, 2016.

20. In 2002, the jury in *Judy Thomas v. Trans Union LLC,* District of Oregon, Case No. 00-1150-JE, found Trans Union had willfully violated the FCRA by mixing Judy Thomas with another consumer and failing to unmix them despite Ms. Thomas' disputes. The jury awarded Ms. Thomas $5 million in punitive damages and $300,000 in actual damages. Despite the verdict, the defendants continue to mix consumers' files with other consumers' files.

21. In 2007, the jury in *Angela Williams v. Equifax Information Services, LLC,* Circuit Court for Orange County Florida, Case No. 48-2003-CA-9035-0, awarded Angela Williams $2.7 million in punitive damages and $219,000 in actual damages for willfully violating the FCRA by mixing Angela Williams with another consumer and failing to unmix them despite Ms. Williams' disputes. Despite the verdict, Equifax continues to mix consumers' files with other consumers' files.

22. In 2013, the jury in *Julie Miller v. Equifax Information Services, LLC,* District of Oregon, Case No. 3:11-cv-01231-BR, awarded Julie Miller $18.4 million in punitive damages and $180,000 in actual damages for willfully violating the FCRA by mixing Julie Miller with another consumer and failing to unmix them despite Ms. Millers' disputes. Despite the verdict, Equifax continues to mix consumers' files with other consumers' files.

23. Over the last ten years, Experian has been sued hundreds of times by consumers whose files were mixed with a different consumer by Experian.

24. Experian is sued over five hundred times per year wherein a consumer makes an allegation that Experian violated the FCRA.

25. In *Calderon v. Experian*, the court compelled Experian to produce a list of prior lawsuits concerning mixed files against it for the five (5) years preceding Plaintiff's complaint. Also, the court compelled Experian to produce discovery on the number of mixed file disputes it handled in the preceding five (5) years. *Calderon v. Experian*, Case 1:11-cv-00386-EJL-MHW, pp. 7-8 (D. Idaho Jun. 18, 2012). Indeed, Experian has produced the *Calderon* list in other lawsuits, including lawsuits filed by the undersigned.

26. In the regular course of business, Experian currently maintains a list of lawsuits filed against it, and the list is readily accessible to Experian.

27. Similarly, Equifax and Trans Union are sued hundreds of times wherein a consumer makes an allegation that said defendants violated the FCRA.

28. In the regular course of business, Equifax and Trans Union maintain a list of lawsuits filed against it, and the lists are readily accessible to said defendants.

8

29. No less than three court of appeals have held a consumer reporting agency violates § 1681e(b) and may be found to have willfully violated the FCRA when it mixes a consumer's file with another consumer.

30. The FTC had specifically warned consumer reporting agencies to review their procedures when a mixed file case occurs.

31. Despite federal law, Congressional mandate, federal and state government enforcement actions, hundreds of other consumer lawsuits, mixed files remain a significant problem for consumers, including Plaintiff.

32. The sale of consumers' most private and sensitive personal and financial information is a multi-billion-dollar industry for the CRAs.

33. Experian's parent corporation, Experian plc, reported $4.81 billion in revenue for the year ending March 31, 2015.[4]

34. Equifax reported more than $2.66 billion in operating revenue in its annual report for year ending in 2015.[5]

---

[4] http://annualreport.experianplc.com/2015/_resources/pdf/Experian%20Annual%20Report%202015.pdf  Last visited June 29, 2016.

[5] http://files.shareholder.com/downloads/ABEA-32806R/1801692852x0x882810/CC30F45C-8BF7-4814-8A29-A7CE1D85EDCA/15-1002_2015_Annual_Report_Interactive_PDF_FINAL_032116.pdf Last visited June 29, 2016.

35. Trans Union reported over $1.5 billion in revenue for year ending 2015.[6]

## JURISDICTION & VENUE

36. This Court has jurisdiction pursuant to 15 U.S.C. §1681p.

37. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## PARTIES

38. Plaintiff Michael Campbell ("Plaintiff") is an adult individual resident of this judicial district. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

39. Defendant Experian Information Solutions, Inc. ("Experian") is an Ohio corporation with its principal place of business in California. Experian does business in this judicial district. Experian is a nationwide consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f). Experian regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports" as defined by 15 U.S.C. §1681a(f) to third parties.

---

[6] http://d1lge852tjjqow.cloudfront.net/CIK-0001552033/ca89f336-4b0d-4e0f-b841-cc0d09c40d45.pdf?noexit=true Last visited June 29, 2016.

Experian disburses such consumer reports to third parties of contract for monetary compensation.

40. Defendant Equifax is a Georgia corporation with its principal place of business in the state of Georgia. Equifax does business in this judicial district. Equifax is a nationwide consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f). Equifax regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Equifax disburses such consumer reports to third parties of contract for monetary compensation.

41. Defendant Trans Union is a Delaware corporation with its principal place of business in the state of Illinois. Trans Union does business in this judicial district. Trans Union is a nationwide consumer reporting agency as defined by 15 U.S.C. § 1681a(f). Trans Union regularly engages in the business of assembling, evaluating and disbursing information concerning consumers for the purpose of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Trans Union disburses such consumer reports to third parties of contract for monetary compensation.

42. Experian, Equifax and Trans Union are referred to collectively as the "Defendants" throughout the complaint.

## FACTUAL ALLEGATIONS

43. Defendants are regulated as "consumer reporting agencies" ("CRA") under the FCRA 15 U.S.C. § 1681a(f).

44. Defendants sell millions of consumer reports (commonly referred to as "credit reports" or "reports") per day and also sell credit scores.

45. Experian's primary business is the sale of consumer reports.

46. Equifax's primary business is the sale of consumer reports.

47. Trans Union's primary business is the sale of consumer reports.

48. Pursuant to the FCRA, Defendants must follow reasonable procedures which assure that the reports they sell meet the standard of "maximum possible accuracy." 15 U.S.C. § 1681e(b).

49. Defendants sold credit reports to third parties with inaccurate and derogatory information concerning Plaintiff. The information includes, but is not limited to, public record information, personal identifying information, account information, and inquiry information (the "inaccurate information"). The information is false because the information relates to another consumer. The inaccurate information harms Plaintiff's credit reputation because it does not accurately depict his credit history and creditworthiness.

50. Experian prepared and issued credit reports concerning Plaintiff that included the inaccurate information. Upon information and belief,

Experian identified Plaintiff's file as a "confirmed mixed file" as that term is defined by Experian's settlement agreement with the New York Attorney General. Experian sold Plaintiff's credit report to third parties for transactions that did not relate to Plaintiff. Plaintiff disputed the inaccurate information to Experian. Upon information and belief, Experian continued to report to third parties the inaccurate information.

51. Equifax prepared and issued credit reports concerning Plaintiff that included the inaccurate information. Upon information and belief, Equifax identified Plaintiff's file as a "confirmed mixed file" as that term is defined by Equifax's settlement agreement with the New York Attorney General. Equifax sold Plaintiff's credit report to third parties for transactions that did not relate to Plaintiff. Plaintiff disputed the inaccurate information to Equifax. Upon information and belief, Equifax continued to report to third parties the inaccurate information.

52. Trans Union prepared and issued credit reports concerning Plaintiff that included the inaccurate information. Upon information and belief, Trans Union identified Plaintiff's file as a "confirmed mixed file" as that term is defined by Trans Union's settlement agreement with the New York Attorney General. Trans Union sold Plaintiff's credit report to third parties for transactions that did not relate to Plaintiff. Plaintiff disputed the

inaccurate information to Trans Union. Upon information and belief, Trans Union continued to report to third parties the inaccurate information.

53. As a result of Defendants' failure to comply with the requirements of the FCRA, Plaintiffs suffered and continue to suffer actual damages, including lost opportunity to receive credit, damage to reputation, damage to creditworthiness, reduction in credit score, invasion of privacy, out of pocket expenses, emotional distress and interference with Plaintiffs' normal and usual activities for which Plaintiffs seek damages in an amount to be determined by the jury.

## COUNT ONE – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (against Experian)
### (Negligent Noncompliance with FCRA)

54. Plaintiffs adopt and incorporate the above-numbered paragraphs as if fully stated herein.

55. Experian negligently failed to comply with the requirements of the FCRA.

56. As a result of Experian's failure to comply with the requirements of the FCRA, Plaintiffs suffered and continue to suffer actual damages, including lost opportunity to receive credit, damage to reputation, damage to creditworthiness, reduction in credit score, invasion of privacy, out of pocket

expenses, emotional distress and interference with Plaintiffs' normal and usual activities for which Plaintiffs seek damages in an amount to be determined by the jury.

57. Plaintiffs request attorneys' fees pursuant to 15 U.S.C. § 1681o(a).

## COUNT TWO – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (Against Experian)
### (Willful Noncompliance with FCRA)

58. Plaintiffs adopt and incorporate the above-numbered paragraphs as if fully stated herein.

59. Experian willfully failed to comply with the requirements of the FCRA.

60. As a result of Experian's failure to comply with the requirements of the FCRA, Plaintiffs suffered and continue to suffer actual damages, including lost opportunity to receive credit, damage to reputation, damage to creditworthiness, reduction in credit score, invasion of privacy, out of pocket expenses, emotional distress and interference with Plaintiffs' normal and usual activities for which Plaintiffs seek damages in an amount to be determined by the jury.

61. Plaintiff also seeks statutory and punitive damages in an amount to be determined by the jury.

62. Plaintiff requests attorneys' fees pursuant to 15 U.S.C. § 1681n(a).

### COUNT THREE – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (Against Equifax)
### (Negligent Noncompliance with the FCRA)

63. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

64. Equifax negligently failed to comply with the requirements of the FCRA.

65. As a result of Equifax's failure to comply with the FCRA, Plaintiff suffered and continues to suffer actual damages, including lost opportunity to receive credit, damage to reputation, damage to creditworthiness, reduction in credit score, invasion of privacy, out of pocket expenses, emotional distress and interference with Plaintiffs' normal and usual activities for which Plaintiffs seek damages in an amount to be determined by the jury.

66. Plaintiff requests attorneys' fees pursuant to 15 U.S.C. § 1681o(a).

### COUNT FOUR – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (Against Equifax)
### (Willful Noncompliance with the FCRA)

67. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

68. Equifax willfully failed to comply with Section 1681e(b)'s requirements of the FCRA.

69. As a result of Equifax's failure to comply with the requirements of the FCRA, Plaintiff suffered and continues to suffer actual damages, including lost opportunity to receive credit, damage to reputation, damage to creditworthiness, reduction in credit score, invasion of privacy, out of pocket expenses, emotional distress and interference with Plaintiffs' normal and usual activities for which Plaintiffs seek damages in an amount to be determined by the jury. Plaintiff also seeks statutory and punitive damages in an amount to be determined by the jury.

70. Plaintiff requests attorney fees pursuant to 15 U.S.C. §1681n(a).

**COUNT FIVE – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**
**(Against Trans Union)**
**(Negligent Noncompliance with the FCRA)**

71. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

72. Trans Union negligently failed to comply with the requirements of the FCRA.

73. As a result of Trans Union's failure to comply with the FCRA, Plaintiff suffered and continues to suffer actual damages, including lost opportunity to receive credit, damage to reputation, damage to creditworthiness, reduction in credit score, invasion of privacy, out of pocket expenses, emotional distress and interference with Plaintiffs' normal and usual activities for which Plaintiffs seek damages in an amount to be determined by the jury.

74. Plaintiff requests attorneys' fees pursuant to 15 U.S.C. § 1681o(a).

**COUNT SIX – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**
**(Against Trans Union)**
**(Willful Noncompliance with the FCRA)**

75. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

76. Trans Union willfully failed to comply with the requirements of the FCRA.

77. As a result of Trans Union's failure to comply with the requirements of the FCRA, Plaintiff suffered and continues to suffer actual damages, including lost opportunity to receive credit, damage to reputation, damage to creditworthiness, reduction in credit score, invasion of privacy, out of pocket expenses, emotional distress and interference with Plaintiffs'

normal and usual activities for which Plaintiffs seek damages in an amount to be determined by the jury. Plaintiff also seeks statutory and punitive damages in an amount to be determined by the jury.

78. Plaintiff requests attorney fees pursuant to 15 U.S.C. §1681n(a).

## JURY DEMAND

79. Plaintiffs request a jury trial on all claims.

## PRAYER

Wherefore, Plaintiff prays for judgment against Defendants as follows:

On the First Claim for Relief:

1. Actual damages to be determined by the jury; and

2. Attorneys' fees and costs.

On the Second Claim for Relief:

1. Actual damages to be determined by the jury;

2. Punitive damages to be determined by the jury;

3. Statutory damages to be determined by the jury; and

4. Attorneys' fees and costs.

On the Third Claim for Relief:

1. Actual damages to be determined by the jury; and

2. Attorneys' fees and costs.

On the Fourth Claim for Relief:

1. Actual damages to be determined by the jury;

2. Punitive damages to be determined by the jury;

3. Statutory damages to be determined by the jury; and

4. Attorneys' fees and costs.

On the Fifth Claim for Relief:

1. Actual damages to be determined by the jury; and

2. Attorneys' fees and costs.

On the Sixth Claim for Relief:

1. Actual damages to be determined by the jury;

2. Punitive damages to be determined by the jury;

3. Statutory damages to be determined by the jury; and

4. Attorneys' fees and costs.

Dated: June 29, 2016

Respectfully submitted,

**/s/ Micah S. Adkins**
Micah S. Adkins (ASB-8639-I48A)
**THE ADKINS FIRM, P.C.**
The Kress Building
301 19th Street North, Suite 581
Birmingham, AL 35203
Telephone: (205) 458-1204
Facsimile:  (205) 208-9632
Email:   MicahAdkins@ItsYourCreditReport.com